On behalf of the United States, Judge Kuczynski, I would like one minute for rebuttal. You know, you have whatever you've got left on the clock. Were you counsel at trial? No, I was not, Your Honor. That counsels. Well, it was. Certainly did a fine job turning the district judge around. Yes. You know, I thought it was very impressive. She said 33 months to begin with. Am I in the right case? Yes? Yes. And then after she heard everything, she said, okay, no custody. Wow, that's seldom seen. Whoever that lawyer was was... No, I'm the government counsel. Oh, I'm sorry. You're the government counsel. Yes, we're appealing the sentence. Sorry, I got... I've got a question. What is the standard by which we review? Obviously, it's reasonableness, but what do we have that sets ranges or how far up or how far down we can go? I don't know that I've seen enough yet to know whether it's perfectly okay for a judge to come down from, whatever it is, 33 months down to zero or even higher than that come down to zero. Sure. The standard is reasonableness. As Booker puts it, it's reviewing whether a sentence is unreasonable. The Eighth Circuit has said that that sort of standard of review is akin to abuse of discretion. We would agree with that. There's certainly discretion given to the district court. From this Court's point of view, there are a range of sentences the Court might impose. This Court has not yet overturned any sentence for substantive unreasonableness. Other circuits have, and I've cited three cases in a 28-J letter where other circuits have. And you're hoping this will be the first one, huh? Absolutely, Your Honor. This case, the crime here... You're not much helped by many, whether, huh? Well, Your Honor, that's a very different case. And that case does stand for the proposition that there is a law of discretion given to sentencing. I think one would take away from it there's a huge amount of discretion. Many of us read that. Well, as you say, I read that and couldn't believe my eyes when I read it. But it's still, Your Honor, I mean, reasonableness. This Court has to come. It's important that this Court come to each case and look at each case on its facts as to whether the sentence is reasonable in light of the offense. Here, the offense was extensive and sophisticated. Under the district court's very lenient findings, the defendants... Well, nobody got hurt. You know, it was just money. Respectfully, Your Honor, white-collar crime is, should be treated seriously just like blue-collar crime. A couple of the cases from the other circuits have emphasized that point. I don't disagree with you. And I think if I had been a district judge, I may well have not – well, I may well have decided to impose the sentence differently, but that's not what we're doing here. Justice Kagan, this relates to Judge Scalen's question, too. There must be some quantitative anchor out there for courts to look at, both the district court and this Court. Well, it doesn't necessarily have to be quantitative. It could simply be a recitation of factors that I take into account that this person is a sole breadwinner, family, custody of children, that kind of thing. I understand that. But, Your Honor, what's very important is that the courts in some way abide by 3553A6, which says that there has to be a way to – the court's duty is to eliminate unwarranted disparities between similarly situated defendants, so that a defendant in one courtroom is somewhat in the same ballpark as a defendant in another courtroom in the same courthouse. I thought that's where we had guidelines. Now there's no guidelines left and there are merely advisory. Are we back to pre-guidelines territory? Absolutely not, Your Honor. And even Booker, the whole point of the remedial opinion in Booker is that the guidelines still have some weight and still have some force. In fact, 3553A4 says the guidelines are a factor in the mix the district court must consider. So even if this Court disagrees with the Department of Justice's general position that the guidelines should have the most significant weight because they're an integration of all the factors, at least they are a factor. They are the only quantitative hook to grab onto. But here, clearly, they were a factor. I mean, the judge did start out saying, look, this is where I'm starting from. It's 33 months, she said, which was close to the guidelines range, right? Yes. The guidelines range was 41 to 51. And so she said, well, I'm sort of starting out reasonably close to the guidelines range. You really don't have any quarrel with that. I mean, she was close enough, I would think. And then she listened. I mean, you know, a presentation was made and evidence brought forth, and then she, obviously, she didn't flip a coin. She didn't use any permissible factors, say, oh, you know, I give it to him because, you know, he's white or he's black. I mean, there's nothing of that sort. I mean, she obviously listened to the evidence and listened to the situation. And there's a reason, you know, a very intelligent, hardworking judge who, at the end of the day, said, now I have been moved to give a noncustodial sentence. What more can we do beyond that? I implore you, Justice Kaczynski, to not limit this Court's general review to sort of the procedural question of whether the Court can't do that. So what would you have us do? We should look substantively at the result of the sentence. How? This probationary sentence was so far away from the advisory guideline range that it is not justified by the nature of the offense, the need for general deterrence, the need to promote respect for the law. Well, let me try that a little bit. Apparently, the guideline, appropriate guideline would be 4151. She was thinking about 33. You wouldn't object to 33, presumably. In district court, Your Honor, we would because we – and here, standing here today, I do not think that her reasons even supported going down to 33. However, given the discretion that she has for reasonableness, we would not choose to appeal that. Okay. Suppose it's 23. That's where you get into line drawing, and it's not easy. In the Thurston case that we cited from the First Circuit, the First Circuit didn't just remand the sentence and say you went too far from the 60-month range when you went down to, I think it was probation. The court remanded with instructions that in this case, the district court should not go below 36 months or else the court would be unreasonable. So the court drew a line there. Let me – let me, as you're answering the question, I do want you to keep answering Judge O'Scanlon's question. Yes. But what I'd like you to keep in mind, one problem, and the problem is that the harder you make this constraint that you would like to have, the more we back up against Booker. Because the whole idea of making the guidelines advisory is that none of these facts that make up the sentencing range need to be found by a jury beyond a reasonable doubt. Why? Well, because it's just advice. It's just, you know, it's flexible. The more we say, as perhaps you would have us do, well, if you go more than half, let's say you were suggesting a rule like that, some sort of hard constraint like that, the harder the constraint becomes, the more significant those facts become in terms of having to be found by a jury beyond a reasonable doubt. Because these are the – that becomes the facts that butt up against this hard constraint. So in answering Judge O'Scanlon's question, I do want you to keep answering it and, you know, continue what you were saying. But you were saying, well, there has to be some hard constraint, and I'm just wondering how do you reconcile that with Booker? I do, Your Honor. To answer your question, Judge Kozinski, the – there's often a misunderstanding of the Department's position when we want an emphasis on the guidelines. The reason to do that is not to bring back the mandatory guidelines. Those are gone. The reason to emphasize the guidelines and why the guidelines must be an anchor in some way in the Court's analysis is that is the only way to fulfill the mandate of 352A6. Saying there has to be an anchor is sort of a meaningless phrase. We have to understand what it means, and I think that's what Judge O'Scanlon was asking you. That's certainly what I would like you to answer. What does it mean to be an anchor? It means, Your Honor, the Court must exercise some judgment, some substantive judgment. She did. As the courts have in the other circuit cases. She did. She said, I thought about it, and, you know, I start out with the guidelines, and I've – you know, I'm certainly aware of where the guidelines are, and I choose to leave them behind. Respectfully, Your Honor, I'm referring to this Court's judgment. It must exercise some substantive judgment in reviewing the district court. How? How? By looking at the facts, the nature of the offense, the circumstances of the case, the need for general deterrence, and all the factors in the case. And, you know, this Court has – Okay. Okay. And let's say we've done that. So we said, well, this is a crime, and there's lots of money, and lots of – you know, we've gone through all those factors, and what is the bottom line? What do we come up with? I think what you should come up in this case is that in this case, the probationary sentence is unreasonable. It just can't be justified. How about two weeks? You start getting – that also can't be justified. You get into line-drawing questions, I acknowledge. How about a month? That's insufficient, our argument. Okay. So we're going to have to come up with something. Or more appropriately, how about 40 days, which was many-whether? But that's different facts. And the Court looked in that – in many-whether at what the district court had said and did and what the reasons were. In that case, there had been multiple remands. The Court had explained itself many times. The Court – just for one example, in many-whether, the Court – Aren't you conceding the principle in many-whether? No. The principle, I'm arguing, Your Honor, is in this Court's cases. In Mix, for example, this Court makes reference to that there may be sentences that are – that could go too far. In just this case, last Friday, the Muhammad case, this Court – we cite it in our 28J letters. This Court upheld a sentence above the guidelines, and analytically, it applied the sort of analysis that I'm arguing for. It applied substantive reasonableness analysis. There's about eight different points in the opinion where the Court used phrases indicating that it was reviewing the substantive unreasonableness, sort of using the guidelines as an anchor, and whether the Court's reasons were enough to support a sentence that was far away from it. The problem with your analysis there is if Muhammad takes you from 12 to 18 months up to 60 and that's okay, what's to bar our deciding in a similar case from 12 to 18 and take it down to zero? There's no – there's no fixed – Because this Court has to exercise its judgment and look at the facts of the case. It's going to be an unusual case where a district court has imposed an unreasonable sentence, either way, higher or lower. This is that case, Your Honors. This was a probationary sentence. Four defendants pled guilty early. You know, the record reflects they received sentences of five years, two years, one year the defendant who had ten access cards received a sentence of two months. Here, this defendant who went to trial, who even after trial only admitted five access cards when the district court found 1,293 cards, whose guidelines loss was $1 million, he received probation. This is a terrible unfairness to the other defendants. That kind of dramatizes the problem if the court is not tethered in a reasonable way. Well, I have one last question. If we were to ask that there be resentencing in this case, what kind of a signal could we give to the trial judge that would indicate what her lowest level would be, Judge Snyder? This Court could do what the First Circuit did in Thurston and pick a level that this Court from the record believes would be the lowest sort of sentence. In other words, it's up to us to give that number? Well, I don't think normally the appellate court is not considered to be as competent to pick the exact sentence. And what I would expect this Court to do if we were to prevail is to remand to the district court and to say the sentence is unreasonable and why, and then it's up to the district court on the next instance. It was back with 40 days, just like Moneyweather. Then we would have to litigate it again. And that's what led the First Circuit in its Thurston case that I cited to pick a level, because that case had been a comeback case that had come back before. I believe that's an unusual situation and that that, you know, we haven't gone in there  And what I really, I mean, what I really ask this Court, if this Court truly has problems with the general framework that it should review for substantive unreasonableness and, you know, give the guidelines some weight in the mix to look at what the other circuits have done, to look at the analysis used in Muhammad, the principles used in Muhammad as to whether, in analyzing whether those reasons are good enough or not. And if this Court, in analyzing the case in this way, disagrees with me, then we don't win. But in this case, this probationary sentence was so far out of whack and so far unsupported from a guidelines range that was already low. It's not reasonable.    We'll hear from the Defendant. Morning. Was it your fine lawyer below that persuaded Judge Schneider? I'm that fine lawyer. I'm impressed. Thank you. Thank you. But, you know, I really don't want to take the credit because it wasn't me. No, no. A good lawyer needs to be appreciated. I mean, that taking a district judge now from service three months to nothing is not something I have often experienced or seen as fascinating. So why is this reasonable? Well, let me first say I never pass up a compliment, so thank you. However, it was not me. I'm setting you up. I know you are. It was not me. It was the fact that this case is so individual. This case is so unique. It is not something I have ever, ever seen in 18 years of practice. The court is, as this court knows, Judge Schneider started at 33 months, and from there she changed her mind. And what I'd like to point out to the court is what really was the turning point in the case, it was Mr. Whitehead. It was what he said at that allocution because it was at that point in the case.  It wasn't anything I did. It was that Judge Schneider had reviewed the case. You know, she sat through the trial. She sentenced the co-defendant. She knew this case inside and out. She saw Mr. Whitehead. I mean, she observed him on a regular basis because she tried the case, or she was a trial judge. Prior to coming to the 33 months, she had already identified certain 3553 factors, and she noted them on the record. She said she's considered all the guidelines. She went through an extensive guideline calculation, and it was extensive because it was very confusing with the number of items and how much they were worth. She talked about the seriousness of the offense. She talked about the nature and circumstances of the offense. Kennedy. Did the judge not think that this was a serious offense? No. Actually, she did say it was a serious offense on several occasions. She said it at 35 — I'm sorry, at government's record at 526. She said it, I can cite, too many times where she said how serious this offense is, and that she recognized the seriousness of the offense. I think what's happening here is the government doesn't like what Judge Snyder ultimately relied upon. I must tell you, I don't get it. Okay. I don't see anything unusual about this case. You said how unusual you find it. Snyder said it's unusual and all that. But to me, it's just a guy who decides to engage in some massive fraud out of his house. I mean, it's not sort of a one-time act. I mean, this is something that he sells for some, what, $200 and charges a monthly fee for those cards. So this is sort of a business. This is not somebody who one time sort of falls into — accidentally falls into temptation. I shouldn't use that term, but one time is tempted to steal when the opportunity arises. This is a business. This is a sophisticated enterprise. And it's, frankly, a problem. I mean, we all pay more for our various services because companies like DirecTV and others have to guard against this kind of theft. So it's a problem for the company. It's a problem for the rest of us. I don't sort of get it, what's so unusual about this case. This is just sort of a petty thief, a little bit big. What justifies a noncustodial sentence here? You know, assuming everything the Court said is true, that this is a big fraud, and the factors that — and I'm not disagreeing with the Court, but still, at the side, given all of that, what was the reasonable sentence? I'm asking you something else. You say, boy, is this an unusual case. Boy, this is so different from everything I've seen. And I'm telling you, I don't get it. To me, this looks like the run-of-the-mill kind of fraudulent criminal, the kind of guy that keeps FTC busy 365 days a year. What's so special about Mr. Whitehead? And what is going to keep every white-collar criminal with a sob story from getting off on probation? This case has nothing to do with every white-collar criminal. And that's the whole point of post-Brooker sentencing, as far as I can tell, is about the individualized sentence. Here, Judge Snyder specifically tied the 3553A factors to this case and this defendant. And in so doing, she articulated those factors very precisely and very specifically. She found that there was little likelihood of recidivism. That was a factor that she considered as to whether or not to impose a custodial sentence. She found that Mr. Whitehead's mother's condition, the fact that he, in fact, was a custodial parent with an unusual relationship with his child — But his mother's condition was anything but clear and, at best, probably not grave. I am not weighing which factor is more important because what Judge Snyder — And being a custodial parent is not unusual. However, certain relationships between parents and children can be, just like any human relationship can be different from another. And in this case, Judge Snyder found — All situations where a parent is taken from the family into prison are tragic. I have had experiences, as I'm sure you have — you practice criminal law — where children — where the defendant is pregnant and the child is born in custody. And you know what happens then. I mean, they are separated very quickly after birth. So these are all tragic things. But also things that the defendant has to take into account when he sets upon his criminal scheme. I have a very hard time distinguishing this case from every other defendant I have seen, either here on review or in district court when I've actually sentenced people myself, where they all have a sob story. It is never easy to sentence people. And it is never — nobody ever says, Boy, am I looking forward to getting away from all that. You know, my nagging family, you know, from the — you know, having to earn a living. I'm just looking forward to going to prison where they feed me and close me and I have a good old time. Nobody's ever said that to me. So I just don't get it. If we say this is okay, I just — I don't understand how there's any meaningful review left for this court to perform in sentencing. Maybe you can help us out. Tell us how this case — we could affirm in this case, and yet the next case that comes along where you'll say, oh, no, that's gone too far. You know, I would love to be able to give the court that guidance. I can't. I can only speak to this particular case with these specific factors. And this court has historically — Well, let me make it as clear as I possibly can. You haven't made it clear enough to me to persuade me. Okay? I can't speak for my colleagues, and I can't speak to what I'll do when I, you know, ultimately make the decision. But so far, you've said nothing that persuades me. And I do have to think about the next case and the next case after that and the next case after that. And I have to say, oh, well, counsel has told me something here that, you know, I can write an opinion, or, you know, whichever member of the panel writes an opinion, that says, okay, this is okay, but there is meaningful review. There's something we can do in the next case and the next case after that to say that not anything that this judge does is okay. So far, you've given me nothing at all. And I'm not blaming you. I'm just telling you where you stand with me. This court has previously acknowledged that sentencing needs to be individualized. That's what this court said in Plouffe. This court affirmed the sentence in Mix where the court, the district court, just touched upon the 3553 factors. This court affirmed the sentence in Knows His Gun where the district court just made a showing of the factors. In the case before this court now, Judge Snyder specifically identified factors she was relying on. The fact that those factors are not the same factors the government was relying on does not make this sentence unreasonable. Okay. What are those factors? Let's go over them one by one because I am, what are these factors? Consideration of the guidelines, 3553A5. Consideration of the seriousness of the offense, 3553A1. Well, but surely it can't be enough for the judge to say I've considered the seriousness of the offense. I mean, we have to say that first she doesn't think it's too serious if she gives a probation, a sentence of probation. I have to disagree with that. I think this is pretty serious stuff. Well, I think it's a weighing process between the seriousness of offense and perhaps extreme remorse. And where is the benefit in sending someone to jail if there are better ways to affect sentencing? The government just refers to a probationary sentence. That was not the end of the day here. There was one year. A question on the monetary portion of the sentence. It looked like a very, very modest $800 a month for the first, what, five years? It was a $1 million restitution amount fixed at a minimum of $850 a month. Mr. Whitehead is a painter and that's what the court. Okay. That's only about $60,000 roughly. That was what the court said. That is correct. What about, is the defendant still liable for the remainder of the restitution of $1 million? Any time a restitution amount is imposed, it is never discharged at the conclusion of probation. It follows you for the rest of your life. So he will have that $1 million. So at least there is a $1 million restitution element in the sentence. Absolutely. There's also 12 months of house arrest with electronic monitoring, which he's about to complete. There was 1,000 hours of community service. This Court specifically said the need for community service as important in this sentencing, which directly relates to 3553a2d as a corrective treatment and also 3553a3 as a kind of sentence available. This Court wasn't just having Mr. Whitehead walk. She was tailoring a sentence to Mr. Whitehead and to this offense. In Mohamed, which was a case that recently came out where ---- I think most of your clients would call that walking. Would what? Would call that walking. In Mohamed. Mohamed would not have said he walked. In that case, the district judge, as the Court knows, recognized that the sentence was 12 to 18 months pursuant to the guidelines, and then it went up to 60 months. And that entire sentence was based on the Court's perception of the seriousness of the offense. I don't know Mr. Mohamed, but I know he's not Mr. Whitehead. And whatever Judge Percy in that case looked at in the totality and the whole global world of that case and that defendant, Judge Percy decided that was the correct sentence in that case. This Court has historically and certainly post-Booker given deference to the sentencing judge. And it's interesting because the government in the case right before this one said that's exactly what this Court should do, give deference to the sentencing judge. But it's really notable that now when another case comes before this Court and the government doesn't like the sentence, what does the government say? You can't let the sentencing judge get away with that. But one case before, it was fine. That's – the government can't have it both ways. And that's what this Court – I think we should put the government in jail. I'm with you. You have made your case. You've persuaded me. For taking inconsistent positions in court. Anyway, to sum up. Should I sum up? I think what we should do is we should make counsel both sides write draft opinions, supporting their side and see how well you do. I think I've got the facts, so I think I'm okay with that. I'm sure. Yeah. I think we understand. We understand. I understand all the questions. Did the Court see my 28-J letter on Mohammed? Should I provide that to the Court? We've heard of Mohammed. Yes or no? We have heard of him. You haven't. We've received it. Good. Very good. Very good. Well, allow me to just make some concluding remarks, if that would be okay. Sure. So, in conclusion, if the Court – and this is no challenge or anything – but if the Court finds, for reasons I really can't identify, that this sentence is unreasonable, when Mohammed just comes down and that sentence is reasonable, I think, as the Court in Mohammed said, just this discretionary thing as a double-edged sword, I think that sword somehow becomes single-edged at the end of the day. The government makes a lot of arguments on one side, and when certain factors are not the most important factors to the sentencing judge, they seem to flip their argument. This sentence in this case was sufficient but not greater than necessary, and I think the record reflects that amply, and I think this Court should affirm the sentence consistent with the precedent that this Court has handed down thus far post-Booker. Can I thank you? Thank you. Does the government wish one minute for rebuttal? Yes. Thank you, Your Honor. We should give deference to the district court. If we give deference to what the district court's view was after – of the appropriate sentence after viewing the trial – You like Mohammed, yes? Yes. The analysis of Mohammed, I think, is correct. In that case, there was plenty of reason and well expressed by the district court to depart from the guidelines, and it could be the case, and there are many cases – There were reasons here, too, but you wanted to do a substantive review. Which means we don't just look at the reasons to see whether the district judge had the right kinds of reasons. We actually have to do some sort of substantive limitation with some sort of substantive constraint, and if you look at the months of departure in Mohammed, it's close to what was here, much more than what the judge did. Well, the analysis that many circuits have done is that you start with the advisory guideline range, and the greater the variance from the range, either way, the better the reasons have to be. That's the way – one can't always make a test more formulaic than that in a sort of situation like this. Here, these reasons – if you start with the 33 months, we give deference to what the district court viewed after the trial and after reading the sentencing papers as the appropriate sentence. We're left with the district court getting from 33 months to zero based on the And this is after the defendant has already received acceptance of responsibility. But I hear you did a really great job of saying he's sorry. We're asking this Court – I appreciate this Court's hearing, but this is serious to us. For example, we had two cooperators here plead guilty early, yet one year and two years, then this defendant comes into court. Life isn't always fair, but if the – Was it the same sentencing judge? Did Judge Schneider sentence all three? They were different sentencing judges for the other defendants. But I thought I heard Ms. Marino say that Judge Schneider also sentenced another co-defendant in this case. The co-defendant – the cooperator that testified against the defendant, whose name is Vanderseel, was sentenced to probation, I believe, by Judge Schneider. That defendant testified. Isn't that relevant? Isn't – can't we take that into account? Sure. But that is the person who the defendant paid $250 a month for a few months to get the programming code from, a very different situation. That defendant also admitted his guilt right away, cooperated, came into court, and testified. The other defendants who were more like defendant in that they actually sold access cards got five years, two years, one year, and two months. Defendant got two months, only ten access cards. So, you know, this just serves to dramatize the problem under 3553a6 if the Court doesn't use the guidelines as an anchor and provide reasons. I mean, if there are reasons for a variance that are good ones, then that's a way to explain to defendants and to the public why one defendant is sitting in jail for longer than another. It's an injustice and unfair when there aren't good reasons. When a sentence is unreasonable like this one, that's when it's time for this Court, and I implore this Court to step in. Do you have a position as to where a defendant was in this criminal enterprise, where he was? Was he at the center of it, or was he? He was one of the two highest. That's the representation we made along with Randall Walter, who's the defendant who got five years. He was one of the two highest among this array of defendants that we have. How did we get to five years for Randall Walter? He had, I mean, the Court followed the guideline range in that case. We don't have a lot of this in the record, but we know that defendant was responsible for 6,000 access cards in what he agreed to in his plea agreement. Here the defendant had said in e-mails that he sent, I'm sorry, in postings that he made on the website that he was responsible for 5,000 access cards. The district court here made very lenient findings and said that she was only going to hold the defendant responsible for the number of cards that the defendant's paid for, even though we know there are other cards that were paid for by money order or by cash. So we had initially argued for 5,000 cards for him. But you're not disputing that fact? We're not disputing the fact. The number of cards at this point. No. That's the district court's finding. So the district court's finding was 12. Even findings are very easy to dispute, if you think they're unsupported by the record. We did dispute it, but for purposes I don't know. It's not on appeal. But you're not disputing it on appeal? No. And my choice as an appellate lawyer here was not to deal with the rearranging of the deck chairs as to whether, for example, the defendant should get acceptance of responsibility when he died. You want to sink the bank bank is what you're arguing. Well, that's what happened in this case. Your Honor, and again, I appreciate the humor, but my choice was not to stand up here complaining about the giving of the defendant acceptance of responsibility, even though he went for trial, when the larger issue here is the step after that. The court exercising its great discretion to just go too far, to go all the way down to probation for reasons that are not supported, which lend too little weight to the nature and circumstances of the offense, the need for general deterrence, the need to promote respect for law, most importantly, the guidelines in this hearing. Thank you very much. Thank you, Your Honor.  Stand submitted.
judges: Kozinski, O'scannlain, Bybee